ROBERT McGEE CANNON AND BARBARA TAYLOR CANNON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cannon v. Commissioner
Docket No. 11753-81.
United States Tax Court
T.C. Memo 1983-436; 1983 Tax Ct. Memo LEXIS 351; 46 T.C.M. (CCH) 855; 4 Employee Benefits Cas. (BNA) 2129; T.C.M. (RIA) 83436; July 26, 1983. *351 During 1977 petitioner paid $1,294 in union dues, $916.28 of which was in payment of required contributions to his union's pension fund. Held, the payment of $916.28 constitutes either a capital expenditure or a personal expense and therefore is not deductible as a business expense. Robert McGee Cannon, pro se. Robert A. Miller, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated March 5, 1981, respondent determined a deficiency in petitioners' Federal income tax for the taxable year 1977 in the amount of $304. The sole issue to be decided is whether mandatory contributions made by petitioner Robert McGee Cannon to his union pension fund are deductible as business expenses. FINDINGS OF FACT Some of the facts *352 have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners resided in Frederick, Maryland at the time of filing the petition herein. They timely filed a joint Federal income tax return for 1977 with the Office of the Director, Internal Revenue Service. Petitioner Barbara Taylor Cannon is a petitioner herein only by reason of having filed a joint return with her husband, Robert McGee Cannon (hereinafter petitioner). In 1977 petitioner was a second-pressman (lithographer) employed by the Fawcett Printing Corporation in Rockville, Maryland.He was a member of Local 285 of the Graphic Arts International Union and paid $1,294 in union dues to such union during 1977. Of this amount, $378 was in payment of regular membership dues and assessments and $916.28 was in payment of required contributions to his union's pension fund known as the Inter-Local Pension Fund of the Graphic Arts International Union. Petitioner was required to make contributions to the union pension fund in order to remain a member of Local 285 and to retain his union job. There was no provision for voluntary contributions. *353 Under the provisions of the plan, once a member contributed at least $130 (known as a unit of contribution) to the plan, his benefits in the plan became vested. From that point on, should he leave his local to retire or otherwise become ineligible for membership in the local or any other local which participated in the plan, he would be entitled to a Vested Benefit Certificate. Upon receipt of such document, the member could elect to receive a monthly benefit (based on the amounts contributed to the fund) at retirement age or to withdraw in cash between 55 percent and 95 percent of the contributions made to the plan by him, depending upon how many units of contribution he had made to the plan. On his return for the year in question, petitioner deducted the full $1,294 paid to the Graphic Arts International Union. In his statutory notice, respondent disallowed the $916.28 attributable to petitioner's contributions to his union's pension fund. OPINION The sole issue in this case is whether the aforenoted $916.28 contributed by petitioner to his union's pension fund is deductible by him. We see no material distinction between the facts of the instant case and those of *354 , where we concluded that contributions to a pension or retirement fund "are either capital expenditures (presumably recoverable without tax upon return of the contributions in a lump sum or under the rules of section 72 in the case of an annuity) or, if they are expenses, are not deductible because of their nature as personal expenses." See also . This result is not changed by the fact that payment to the pension fund was a prerequisite to union membership. [1]
Petitioner asserts that the instant facts are distinguishable from the facts in prior cases since a participant in the pension plan was entitled to a maximum of 95 percent of his contributions if such participant retired from his position prematurely or otherwise severed his connection to the plan. Although there is superficial appeal to petitioner's contention, we do not believe that the potential forfeiture of a portion of the contributions made by him to the plan can change the result established by prior case law. In all likelihood, *355 petitioner will receive everything he paid into the plan and more. The insertion of a clause into a plan which makes it a remote possibility that some of the contributed amount might not be returned to petitioner at some later time is not sufficient to change the basic nature of a plan that clearly is intended to benefit the participant. We believe that petitioner received benefits the right to which was at least equal to the amount withheld from his salary. See , affd. . In short, we do not believe, on these facts, that the potential loss of a portion of his contributions is sufficiently material to place this case outside established law. The payments are either capital or personal in nature and not deductible under any section of the Code. Petitioner finally maintains that deductions taken by many of his fellow employees or persons in similar circumstances had not been disallowed by respondent at the time of trial. While it appears that petitioner may be an involuntary participant in a test case (seldom a happy happenstance) with respect to the particular pension fund *356 involved herein, respondent is not estopped by prior inconsistent treatment of taxpayers in similar circumstances, or, for that matter, of petitioner himself, from disallowing the claimed deduction. Cf. , affg. ; . To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. See .↩